**SIGNED.**



**Dated: May 06, 2010**

_Randolph J. Haines_

_____
**RANDOLPH J. HAINES**
**U.S. Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GORILLA COMPANIES LLC, et al., | ) | CASE NOS. 2:09-bk-02898-RJH |
| | ) | 2:09-bk-02901-CGC |
| | ) | 2:09-bk-02903-GBN |
| Debtors. | ) | 2:09-bk-02905-CGC |
| | ) | |
| | ) | JOINTLY ADMINISTERED |
| _____ | ) | |
| | ) | |
| GORILLA COMPANIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | ADVERSARY NO. 2:09-ap-00266-RJH |
| | ) | |
| v | ) | |
| | ) | |
| ROBB M. CORWIN, et al. | ) | OPINION DENYING MOTION TO ALTER |
| | ) | OR AMEND JUDGMENT RE CORE |
| Defendants. | ) | NATURE |
| _____ | ) | |

Defendants Robb Corwin and 13 Holdings LLC (collectively, "Corwin") have moved the Court to alter or amend its judgment to find that all of the claims asserted by Debtor Gorilla Companies, Inc. ("Gorilla") are non-core. Although this has previously been briefed, argued and decided, Corwin's motion to alter or amend argues that the Ninth Circuit's recent decision in *In re Marshall*, 2010 WL 986781 (9th Cir. March 19, 2010), changed the law.

Corwin is correct that *Marshall* changed the law, but the question remains whether this case fits within the narrow category of cases affected by *Marshall's* change. The Court concludes it does not.

**FACTUAL BACKGROUND**

Robb and Jillian Corwin are the sole owners of 13 Holdings LLC, which was an

event-management company.  In June of 2007, 13 Holdings entered into an asset purchase agreement to sell all of its assets to Gorilla.  Under the asset purchase agreement, 13 Holdings was to receive, along with some other consideration, an immediate cash payment and a deferred payment memorialized by a Seller Note, under which 13 Holdings could be paid up to $6 million depending upon Gorilla's performance.  In early 2008, Corwin demanded and Gorilla made a large payment to 13 Holdings as a prepayment on the Seller Note.  Later that year, however, a dispute arose as to the amount actually due on that Seller Note: Corwin contended Gorilla owed substantial additional amounts under the Seller Note, while Gorilla contended that it not only owed nothing further under the Seller Note but had actually substantially overpaid on the Seller Note.

When Gorilla did not pay the additional amounts that Corwin claimed it owed, Corwin exercised various self-help remedies to collect it in early 2009, including but not limited to taking hundreds of thousands of dollars from ATM machines owned by Gorilla and notifying several substantial Gorilla clients, including the National Football League, the Arizona Cardinals and Arizona State University, that they should make their payments to Corwin rather than to Gorilla.  Gorilla filed suit in state court not only for the amounts it claimed had been overpaid on the Seller Note, but also seeking to enjoin Corwin from attempting to collect from Gorilla's clients.  The state court granted the preliminary injunction, conditioned upon Gorilla filing a bond.  A few days later, on February 20, Gorilla filed this Chapter 11 case, and then on March 10 removed its state court suit to the bankruptcy court as an adversary proceeding.

Corwin sought a remand of the removed state court litigation, and before its remand motion was ruled upon filed proofs of claim in the bankruptcy case on May 20.[1]  On

---

[1]In ruling on Corwin's motion for an extension of time to file its proof of claim, the Court may have agreed (although the minute entry does not reflect) that his filing of a proof of claim should have no effect on Corwin's pending motion for remand, which argued that the Court lacked jurisdiction or should or must abstain pursuant to 28 U.S.C. § 1334.  It does not appear that there was any determination then made whether the filing of the proof of claim would have any effect on the core nature of the removed adversary if the Court retained jurisdiction over it.  Although there is some overlap, core status under 28 U.S.C. § 157 is a distinct issue from bankruptcy jurisdiction under 28 U.S.C. § 1334.  And in moving for an extension of time to file its proof of claim (dkt # 118 in the administrative case, May 11, 2009) Corwin argued that the existence of its claim was already known to

1    June 13, the bankruptcy court denied the motion to remand.

2          In October, Jillian Corwin moved in the Arizona District Court to withdraw the

3    reference of claims Gorilla had asserted against her arguing, among other grounds, that Gorilla's

4    claims were non-core because they arose in November 2008, months before Gorilla filed for

5    bankruptcy.  In November, the District Court denied the motion for withdrawal of the reference,

6    primarily on the basis that the claims asserted against her were not asserted against her

7    individually, but only as against her marital community, and that the marital community had

8    waived its right to a jury trial by filing proofs of claim in the bankruptcy court.

9          Corwin's proofs of claim also sought amounts due under other aspects of the asset

10   purchase agreement in addition to the Seller Note.  In particular, Corwin claimed he was due

11   additional consulting fees under a transitional employment agreement entered into as part of the

12   asset purchase agreement, and that he was owed damages for Gorilla's breach of an exception to

13   the non-compete agreement Corwin entered into as part of the asset purchase agreement, which

14   he claimed permitted him to continue providing consulting services for event management.

15   Ultimately both of those additional Corwin claims were settled rather than litigated and decided

16   by the bankruptcy court.

17         So that Gorilla could file a plan of reorganization, Gorilla moved for estimation[2] of

18   the amount due on the proofs of claim.  After trial, the Court estimated that Gorilla owed

19   nothing additional under the Seller Note.  The Court also held that the evidence received in the

20   estimation trial would also be deemed admitted in the adversary proceeding.

21         Trial in the adversary proceeding was held on November 23 and 30.  Following

22   trial, the Court granted judgment in favor of Gorilla and against the Corwins and 13 Holdings,

23   jointly and severally, for almost $3 million.  This included approximately $1.4 million

24   _____

25   the debtors and that the process of determining its claim was already underway, which by itself may
     have been an effective consent to the bankruptcy court's jurisdiction even if no formal proof of claim
26   had ever been filed.

27         [2] When determination of a claim would unduly delay administration of the case, Bankruptcy
     Code § 502(c) permits the claim to be estimated for purposes of formulating, voting on and confirming a
28   plan of reorganization.

3

constituting overpayment on the Seller Note, prejudgment interest on that amount, some $268,000 for conversion of the ATM cash together with prejudgment interest on that amount, and $1 million in actual compensatory damages for lost profits caused by Corwins' conduct that necessitated the bankruptcy. Among other things, the judgment for lost profits was based upon the fraud perpetrated by Robb Corwin individually in manipulating the Gorilla books and records and misrepresenting Gorilla's earnings, which were the basis for calculating the amount due on the Seller Note. That same judgment disallowed all claims asserted by the Corwins in their proofs of claim.

Following entry of judgment, Corwin moved to alter or amend that judgment to include a finding that all of Gorilla's claims were non-core, based on the Ninth Circuit's new definition of "core" in *Marshall.*

**ANALYSIS**

Prior to *Marshall*, the statute was clear that all counterclaims asserted by a debtor against a persons filing claims in the bankruptcy case were defined as core.[3] *Marshall* held, however, that notwithstanding that plain language of the statute, it could not be read so broadly. Although there is no language in the statute to suggest that the word "counterclaim" must be limited to only a certain kind of counterclaim, the *Marshall* court held that it must be construed more narrowly "to avoid potential constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge."[4] To avoid those constitutional issues, therefore, the Ninth Circuit construed 28 U.S.C. § 157(b)(2)(c) to be limited not only to compulsory counterclaims, but even further to those kinds of compulsory counterclaims that are "part and parcel of the [claim] allowance process," as the Ninth Circuit concluded was the preference counterclaim in *Katchen v. Landy.*[5] The *Marshall* opinion went on to find that in that

---

[3]28 U.S.C. § 157(b)(2)(C).

[4]*Marshall* at *15, quoting *Dunmore* v. U.S., 358 F.3d 1107, 1115 (9th Cir. 2004), and referencing potential constitutional problems identified in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*458 U.S. 50 (1982).

[5]*Marshall* at *16, citing *Katchen v. Landy*, 382 U.S. 323, 330 (1966).

case the debtor's counterclaim for tortious interference with a gift expectancy was not "part and parcel" of the allowance of the creditor's claim for defamation, and therefore was non-core.

The Ninth Circuit's *Marshall* opinion also suggests that the construction of § 157(b)(2)(C) must be "much narrower" than its plain language "because it is designed to comply with the constitutional limitations on the bankruptcy court's jurisdiction as set forth in *Marathon*."[6] Unfortunately, however, the Ninth Circuit did not then proceed to identify what those constitutional limits were when adjudicating a debtor's claim against a party that filed a claim against the bankruptcy estate. That circumstance did not exist in *Marathon*, so it can provide no answer to that question. The *Marshall* opinion did indicate that the narrower construction of § 157(b)(2)(C) is also required by *Katchen v. Landy*, where that factual circumstance did exist. Yet *Katchen v. Landy* expressly held there was no constitutional problem for the bankruptcy court to adjudicate a preference action against a creditor who had filed a proof of claim, even though the creditor's proof of claim was unrelated to the transaction in which the creditor had received a preference.[7] It is difficult, therefore, to utilize the facts of *Katchen* to help define what kinds of counterclaims will satisfy the Ninth Circuit's narrower interpretation of § 157(b)(2)(C).

The *Marshall* opinion does not address the Ninth Circuit's own precedent in *Peters v. Lines* holding that "the filing of a proof of claim . . . constitute[s] a consent to the bankruptcy court's [summary] jurisdiction to render an affirmative judgment against the creditor on the trustee's counterclaim *arising out of the same contract*."[8] Perhaps it was not addressed because the facts of *Marshall* did not involve claims and counterclaims arising out of contract, much less out of the same contract. Presumably, that precedent therefore remains good law in the Ninth

---

[6] *Marshall* at *16.

[7] The *Katchen* opinion noted there was a split among the circuits as to whether summary jurisdiction existed over an estate's preference action if it was unrelated to the creditor's claim. *Katchen,* 382 U.S. at 470 n.1. "The decision presently under review [and which the Court affirms] upholds summary jurisdiction to order return of a preference whether or not the preference relates to the same transaction as the claim . . . ." *Id.*

[8] *Peters v. Lines*, 275 F.2d 919, 925 (9th Cir. 1960)(emphasis added).

5

1    Circuit.

2         *Marshall*'s reliance on *Katchen* does imply that  what constituted summary

3    jurisdiction under the former Bankruptcy Act also qualifies as "core" under the post-*Marathon*

4    bankruptcy jurisdictional statutes.  And nothing in *Marathon* itself or the language of the post-

5    *Marathon* statutes suggests that "core" should be any narrower than was summary jurisdiction

6    under the Bankruptcy Act, or that there would be any constitutional concern in having Article I

7    judges hear and determine all cases that were previously regarded as being within summary

8    jurisdiction.  But the *Marshall* opinion failed to note not only that *Katchen* found summary

9    jurisdiction to exist over an unrelated preference counterclaim, but also that Ninth Circuit

10   precedent found summary jurisdiction to exist whenever the counterclaim was compulsory,

11   without requiring any finer analysis of whether it was also "part and parcel" of the claims

12   allowance process.  Indeed, the *Peters v. Lines* opinion expressly equated the basis for finding

13   summary jurisdiction to be the same as the basis for finding a counterclaim to be compulsory.[9]

14        Consequently we are left with essentially two guideposts.  First, we know that

15   *Marshall*'s narrower interpretation is not satisfied when "the nexus between the transactions out

16   of which the claim and counterclaim arise . . . is somewhat attenuated," as was the case with

17   Pierce Marshall's defamation action arising out of statements made by the debtor *after* her

18   husband's death, as compared to the debtor's claim for tortious interference based upon

19   allegations that "span a number of years" *prior* to his death.[10]  And on the other hand, the

20   narrower test is satisfied when the nexus between the transactions out of which the claim and

21   counterclaim arose are not so attenuated, but instead are "part and parcel" of each other as in

22   *Katchen*.

23        It is difficult to give a more precise definition of *Marshall*'s new category of

24   compulsory counterclaims.  Perhaps *Marshall* is simply a good example of a hard case making

25   bad law, bad in the sense of being difficult to apply to other situations.  Perhaps the *Marshall*

26   _____

27        [9] *Marshall* at *16.*

28        [10]*Id.* at *17-18.

distinction will be confined to the facts before that court. Perhaps it will only apply when there is not just a single dispute between the parties, but rather a litigation war that extends over the course of several years, and the creditor's attack and the debtor's counterattack are seen as distinct battles rather than a single dispute. And perhaps it will apply only when a comedy of errors generates an error of comity and a resulting issue of race judicata.[11]

But those issues need not be resolved here because this factual situation is so unlike that in *Marshall*, and akin to that in *Peters v. Lines*. Here, the claims and counterclaims are all "part and parcel" of but a single transaction, namely Gorilla's purchase of the assets of 13 Holdings. Corwin admits that "this dispute began when the parties disagreed about the application of the formula devised for calculating the amount of the Seller Note" that was given as part of that sale.[12] As part of that dispute, Corwin claimed he was owed still more money under that note, and exercised self help remedies in an effort to collect it. This Court found, based on the testimony produced at trial, that it was largely those self help efforts that necessitated the bankruptcy. Corwin also claimed that he was owed consulting fees under the employment agreement he agreed to as part of the sale transaction, and that the Debtor owed him damages for breach of the noncompetition agreement entered into as part of the sale transaction. On the other hand, the Debtor claimed that it had overpaid Corwin because he fraudulently manipulated the books and financial records, and it is that overpayment that gives rise to the judgments at issue.

Much of Corwin's argument hinges on the different elements of the various causes of action, and the different facts that would need to be proved to sustain each of the various causes of action. There is some discussion in the *Marshall* opinion of both the overlap and the

---

[11]Because the District Court had already concluded that the debtor's counterclaim was noncore and therefore performed a *de novo* review and entered its own judgment, the only reason that core status remained an issue for the Ninth Circuit was because a Texas court had entered final judgment after the bankruptcy court's ruling but prior to the District Court's judgment, raising the issue of which ruling was the first to become final and therefore entitled to res judicata effect. *Id.* at *1.

[12]Jill Corwin's Motion to Withdraw the Reference, at 3, filed in District Court on October 15, 2009.

lack of identity of some of the elements of the claims and counterclaims.[13] A closer reading suggests, however, that the comparison of the elements of the causes of action is not the determinative standard for identifying the kinds of counterclaims that satisfy the *Marshall* test. Rather, the *Marshall* test appears to rest on "the nexus between the transaction out of which the claim and counterclaim" arose, rather than a comparison of the elements of the causes of action. That was also the analytical approach of the Ninth Circuit in *Peters v. Lines.*

This transactional-nexus approach is evident, first, from the sentence just quoted from the *Marshall* opinion and its following discussion of the underlying transactions. That analysis focuses on the nexus or identity of the *events* underlying the claims and counterclaims, rather than on the elements of the causes of action asserted. Second, if the test were based on the identity of the elements of causes of action, *Katchen v. Landy* would fail that test. Classically, there are seven elements to a preference, only two of which – that the payment was made to or for the benefit of a creditor, and was made on account of an antecedent debt – may overlap with the creditor's claim against the debtor. And, as *Katchen v. Landy* itself precisely held, there need not even be such overlap, because the preferential payment could have been made on a different debt then the one giving rise to the creditor's proof of claim.

These claims and counterclaims are all "part and parcel" of each other. Unlike what the Ninth Circuit found in *Marshall*, the nexus between the transactions out of which the claim and counterclaim arose is not at all attenuated. In fact, the claims and counterclaims all arise from but a single transaction, and are far more closely related than were the creditor's claim and the Debtor's preference counterclaim in *Katchen*. Consequently nothing in *Marshall* compels a change to this Court's conclusion that all of the claims and counterclaims that are adjudicated by the judgment are core.

Apparently as a fall back argument, Corwin reiterates his argument that the Debtor's claims against Corwin cannot be core because they were filed in state court before the bankruptcy was ever filed, and because they were asserted in the bankruptcy court by removal of

---

[13] *Marshall* at *17 - *18.

that state court complaint before Corwin ever filed a proof of claim in the bankruptcy case. But this is contrary to both the conclusion and the analytical approach in *Marshall*, because it assumes that the core nature of claims hinges on when and how they are asserted, rather than on the basis of the relationship of the transactions from which the claims and counterclaims arose. Therefore nothing in *Marshall* supports this argument.

Moreover, *Marshall* concluded that the narrower interpretation of § 157(b)(2)(c) is required to avoid constitutional problems. But the law is clear there has never been an identified constitutional problem arising from the fact that the debtor's claim against the creditor was asserted *before* the creditor filed a proof of claim or otherwise consented to the bankruptcy court's jurisdiction. To the contrary, the law was always clear that the bankruptcy court's summary jurisdiction could rest upon the defendant's consent that was given or implied *after* the debtor's complaint was filed. Such consent could come from the filing of a proof of claim, as in *Peters v. Lines,* or from failing to object to jurisdiction in answering the adversary proceeding. Indeed, in 1944 the Supreme Court held that the defendant's consent, or objection, could come as late as immediately prior to entry of judgment on the estate's claim.[14] In 1952, Congress abrogated that interpretation by adding § 2a(7) to the Act, which made clear that the defendant's consent to summary jurisdiction had to come at the time the defendant answered the complaint.[15] While this advanced the time for consent, it nevertheless made clear that Congress agreed with the Supreme Court's interpretation that the defendant's consent to jurisdiction could come *after* the complaint had been filed.

The law was equally clear that an adversary defendant could consent to the bankruptcy court's summary jurisdiction simply by filing a proof of claim.[16] Again, nothing in that rule required that the bankruptcy court's summary jurisdiction must hinge on facts existant at the time the adversary complaint was filed, because the defendant's submission to the court of

---

[14]*Cline v. Kaplan*, 323 U.S. 97 (1944).

[15]2 COLLIER ON BANKRUPTCY ¶ 23.08, at 544-49 (14th Ed. 1976).

[16]*Id.* at 549-60.

equity at any time was sufficient to confer the jurisdiction.

Indeed, the language of the current statute defining "core" makes clear that the timing of the filing of the proof of claim is not relevant to the determination of core status. The statute defines as core the estate's counterclaims "against persons *filing* claims against the estate."[17] Use of the participle "filing" indicates that the respective timing is not critical, as would have been indicated if Congress had used words such as "persons who had filed claims against the estate." The Ninth Circuit BAP recently reached this same conclusion that the word "awarded" was a participle rather than a past tense verb so that "damages awarded in a civil action" did not refer only to damages previously awarded but could include damages to be awarded after the petition date.[18]

For the argument that the core nature of the counterclaim hinges on the critical fact of the proof of claim having been filed first, Corwin relies primarily on some language in the Ninth Circuit's *Castlerock*[19] opinion. That opinion apparently hinged, however, not simply of the respective timing of the filing of the proof of claim and the counterclaim, but on a perceived unfairness arising from the facts and procedure in the case. The court held that "it seems *unfair* under the facts of this case to categorize the counterclaims as falling within this provision."[20] The court found that unfairness to arise because the creditor was allegedly "forced" to file a proof of claim "as a defensive maneuver."[21] Here, by glaring contrast, there is no unfairness, Corwin was not forced to file his proof of claim, and Corwin's assertion of claims were never defensive, but always extremely offensive. At trial, the Court found as a fact that it was Corwin's assertion of claims and, particulary, his resort to self-help remedies to collect them, that

---

[17]28 U.S.C. § 57(b)(2)(C) (emphasis added).

[18]*In re Waag*, 418 B.R. 373 (9th Cir. BAP 2009).

[19]*Piombo Corporation v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 161 (9th Cir. 1986).

[20]*Id.* (emphasis added).

[21]*Id.*at 162-63.

forced the bankruptcy filing.  Corwin's attempt to argue it would be "unfair" to conclude that his claims are within core bankruptcy jurisdiction fits the "classic definition of chutzpah."[22]

And Corwin was certainly never compelled to file a proof of claim "as a defensive maneuver."  He was always free to defend against Gorillas' claims against him in the adversary proceeding by demonstrating he had not been overpaid on the Seller Note; nothing compelled him to defend the propriety of the payments he had already received by seeking to recover even more under the Seller Note through the filing of proofs of claim.  By filing the proofs of claim and indisputably seeking to recover more from the bankruptcy estate than he had already received, he submitted that dispute to the jurisdiction of the court of equity, which therefore had jurisdiction to resolve the entire dispute between the parties.[23]

Finally, Corwin argues that a sentence in the *Marshall* opinion suggests that a subsequent proof of claim cannot constitute consent to jurisdiction.  The sentence was: "In bankruptcy cases, jurisdiction over a claim and the compulsory status of a counterclaim is determined as of the time the claim is pleaded."[24]  But the very next sentence modified that by stating: "Accordingly, the analysis of whether a compulsory counterclaim such as Vicky Lynn Marshall's should be afforded 'core treatment' must focus *largely* on what is available to the court at the time of filing, that is, the parties' pleadings."[25]  As noted above, under the

---

[22]*Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 n.5 (2d Cir. 2009)("The 'classic definition' of chutzpah has been described as 'that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan.' Leo Rosten, *The Joys of Yiddish* 92 (1968).").

[23] "Respondents' contention means that, while invoking the court's jurisdiction to establish their right to participate in the distribution, they may deny its power to require them to account for what they misappropriated.  In behalf of creditors and stockholders, the receivers may reasonably insist that, before taking aught, respondents may by the receivership court be required to make restitution.  That requirement is in harmony with the rule generally followed by courts of equity that, having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief."  *Katchen*, 382 U.S. at 476.  "Once consent to the summary jurisdiction of the bankruptcy court appears, that jurisdiction generally will be retained for the determination of all the claims of the parties and for the enforcement of all their rights against each other." 2 COLLIER ON BANKRUPTCY ¶ 23.08[1], at 536 (14th Ed. 1976).

[24]*Marshall* at *17.

[25]*Id.* (emphasis added).

Bankruptcy Act the law had always been that a defendant's consent to the bankruptcy court's summary jurisdiction could, and very often did, come *after* the complaint was filed and served, rather than before. Nothing in the jurisdictional statutes, the Bankruptcy Code, its legislative history, *Marathon* or *Marshall* suggests that either Congress or the Court intended to narrow the bankruptcy court's core jurisdiction from what had always been within summary jurisdiction under the Bankruptcy Act. To the contrary, the law and legislative history are clear the intent was to broaden the bankruptcy court's core jurisdiction to the extent constitutionally permissible.

Although *Marshall* may have defined a new, narrow category of compulsory counterclaims that are not "part and parcel" of the claim, that characterization does not apply to the facts here. Consequently all of the claims resolved by the final judgment are core, and Corwin's motion to alter or amend the final judgment is denied.

DATED AND SIGNED ABOVE

Copy of the foregoing e-mailed
this 6th day of May, 2010, to:

Daniel B. Pasternak, Esq.
Greenberg Traurig LLP
Attorneys for Plaintiff
pasternakd@gtlaw.com

John R. Clemency, Esq.
Craig Solomon Ganz, Esq.
Janel M. Glynn, Esq.
Gallagher & Kennedy
Attorneys for Gorilla Companies LLC
john.clemency@gknet.com
craig.ganz@gknet.com
janel.glynn@gknet.com

Geoffrey S. Kercsmar, Esq.
Todd Feltus, Esq.
Eric B. Hull, Esq.
Kercsmar & Feltus PLLC
Attorneys for Robb M. Corwin, Jillian C. Corwin,
  13 Holdings, LLC and Great Days, LLC
gsk@kflawaz.com
tfeltus@kflawaz.com
ebh@kflawaz.com

/

/

1  Daniel P. Collins, Esq.
   Collins, May, Potenza, Baran & Gillespie, P.C.
2  Attorneys for Robb M. Corwin, Jillian C. Corwin,
    13 Holdings, LLC and Great Days, LLC
3  dcollins@cmpbglaw.com

4
    /s/ Pat Denk
5  Judicial Assistant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28